■ PILGRIM HOMES & GARAGES, INC., Respondent, v FREDERICK FIORE et al., Appellants, et al., Defendants.—In an action to foreclose a mechanic's lien and to recover money damages for breach of a construction contract, defendants Frederick and Joan Fiore appeal from a judgment of the Supreme Court, Suffolk County, dated May 18, 1978, which, *inter alia,* adopted and confirmed the report of the Referee and awarded a money judgment in the principal amount of $57,823.29 to the plaintiff against the Fiores. Judgment modified by (1) deleting the first decretal paragraph thereof and substituting therefor a provision that the motion to reject the Referee's report is granted to the extent that the recommendation that the plaintiff be awarded a judgment in the amount of $57,823.29 is rejected and that the motion is otherwise denied and the Referee's report is otherwise confirmed, and (2) deleting the second and sixth decretal paragraphs thereof. As so modified, judgment affirmed, without costs or disbursements, and action remitted to Special Term for further proceedings consistent herewith. Plaintiff, Pilgrim Homes & Garages, Inc. (Pilgrim), commenced this action to enforce a mechanic's lien to recover the outstanding balance of $66,856.29 on a contract to construct a luxurious one-family, prefabricated home for the defendants Joan and Frederick Fiore (the Fiores). They counterclaimed, alleging, *inter alia,* economic duress, breach of contract and poor workmanship. After numerous hearings comprising more than 2,500 pages of often acrimonious testimony, the Referee issued a fairly comprehensive report recommending that Pilgrim recover $57,823.29, thereby allowing the Fiores credits in the sum of $9,033 on account of certain defects or omissions in plaintiff's performance. Special Term adopted the Referee's findings and confirmed the report. Aggrieved, the Fiores brought this appeal. At the outset, we note that Pilgrim commenced and tried its action on a theory of full performance. To the extent that there was unequivocal proof of omissions or defective performance, Pilgrim sought to prove, often with success: (1) that such defects resulted from the Fiores' incessant efforts at varying the prefabricated home as designed and supplied; and (2) that the Fiores, by ordering Pilgrim off the premises, prevented final completion. Not relying upon the doctrine of substantial performance, Pilgrim made no attempt to show the cost of correcting the defects, or if correction was not reasonable under the circumstances, the resulting diminution in the value of the property (see *Spence v Ham,* 163 NY 220; *Bellizzi v Huntley Estates,* 3 NY2d 112). The record unequivocally establishes that Pilgrim did not fully perform and is therefore not entitled to relief on this basis. Although the Referee did not address the issue of full performance, the conclusion that plaintiff failed to so perform is self-evident from the Referee's allowance of more than $9,000 in credits to the Fiores due to Pilgrim's omissions or defective performance. Further support is found in those items of performance which the Referee characterized as defective, but for which he gave no credit. The failure to establish full performance, is however, not an absolute bar to the plaintiff's right of recovery. Rather, in the area of construction contracts it is well established that substantial performance will support recovery of the contract price less appropriate allowances for the cost of completing omissions and correcting defects (10 NY Jur, Contracts, § 324). Although the instant record reveals numerous instances of incomplete and defective performance, the aggregate of these items have not prevented the Fiores from essentially receiving that for which they bargained: the erection of a prefabricated luxury home. The record firmly

establishes that Pilgrim sought to perform the contract in good faith and successfully constructed an essentially completed home pursuant to the subject contract. In this regard, it is noteworthy that a great many items of dispute concern modifications and additions made at the insistence of the Fiores as part of their incessant, and somewhat inconstant efforts to customize the prefabricated home which the plaintiff agreed to erect. In the circumstances of this case and upon a full review of the record, we necessarily conclude that Pilgrim substantially performed the construction contract. In so concluding, we note that neither the absolute number of incompletely or defectively performed items, nor the relative percentage of such items to the total work, is necessarily dispositive. It is also necessary to measure the extent of unperformed work against the totality of the intended endeavor and thereby determine whether the aggregate of properly performed work constituted the material substance of what the Fiores sought to achieve. It is on this standard that we find that Pilgrim substantially performed the contract by having constructed the house for which the Fiores contracted. One consequence of this holding is that Pilgrim is necessarily precluded from recovering the full contract price since a primary tenet of the doctrine of substantial performance is that the extent of recovery must be limited to reflect an adjustment for those items which were not duly performed. The Referee seems to have adopted this approach as exemplified by the $9,033 credit given to the Fiores. This suggests an implicit finding by the Referee that Pilgrim substantially performed the contract. However, in doing so, the Referee improperly placed the burden of proving the cost of completing omitted performance and correcting defective performance upon the Fiores, rather than on Pilgrim, which bears such burden of proof as a condition of recovering upon the basis of substantial performance (see *Spence v Ham,* 163 NY 220, *supra).* The Referee's erroneous placement of the burden of proof is demonstrated by those portions of his report in which he declares that there was defective performance but that he was unable to allow a credit to the Fiores because of their failure to introduce proof as to the cost of corrective measures. A further consequence of the Referee having proceeded from the posture of Pilgrim being entitled to full recovery less what the Fiores establish to be reasonable credits, was the Referee's several recommendations to give either no allowance, or a greatly reduced one, based upon his own perception, sometimes without support in the record, of a less expensive mode of repair or that the defect was not of sufficient practical detriment to justify a costly repair. Assuming the correctness of the latter perception, the Referee should still have made an allowance to reflect the diminished value of the premises (see *Bellizzi v Huntley Estates,* 3 NY2d 112, *supra).* The above errors require that the matter be remanded for further proceedings in which plaintiff shall bear the burden of proof regarding its decreased costs resulting from having only substantially performed the contract, as well as proof of the cost of completing performance and the cost of correcting the plaintiff's defective performance. When such corrective measures would involve significant rebuilding at substantial cost to correct or complete an item of little practical import, plaintiff must show the extent to which the property is of decreased value as a result of the defect or omission. However, to insure that the remand does not devolve into an unnecessary relitigation of the entire controversy, several guidelines are set forth as follows: (1) The findings of the Referee, as confirmed by Special Term, as to those items for which a credit has already been allowed, are not to be considered on remand unless otherwise indicated below. Accordingly, the subsequent calculation of credit allowed to the Fiores shall

include the previously determined credit, subject to adjustment in accordance herewith. (2) Those items which the Referee found that Pilgrim was not liable for because of either full performance or the failure of the Fiores to show defective workmanship attributable to Pilgrim, are excluded from the scope of remand, unless otherwise indicated below. The significant items which are thus excluded include the issues of: (a) the alleged "cold joint" (multiple) pouring of the foundation; (b) the alleged absence of "exterior foundation material called for by the Scholz plans of 'stone surround soft tile' "; (c) the quality of the plumbing fixtures; (d) the heating system; (e) the bleeding of exterior nails; (f) insulation; (g) the swimming pool, including the height of the ceiling, but not the improper pouring and drainage of the floor surrounding the pool; and (h) the electrical work. These issues, other than the allowed credits, were properly resolved against the Fiores. (3) The issues to be considered on remand are the following: (a) The basement of the premises is damp and there are cracks in the foundation. Although there was testimony that the Scholz uniform specifications for waterproofing were not complied with, Pilgrim did waterproof the foundation in accordance with the express terms of the contract. We agree that in the instant circumstances the explicit contract terms must control over the standardized plans. Nevertheless, the fact of dampness and the cracked foundation indicate defective performance which requires remedial action, the cost of which shall be allowed to the Fiores as a credit. (b) Contrary to the plans, the bay windows are supported by concrete cheeks rather than a fully poured foundation. It appears that there is no significant effect upon the structural integrity of the premises. However, the Fiores are entitled to a credit for any decreased cost to Pilgrim or resulting diminution in the value of the premises. (c) Pilgrim's failure to put the requisite concrete foundation under the front porch. Although there was testimony regarding the cost of remedying this defect, the Referee improperly refused an allowance. (d) Pilgrim's failure to double joist the rafters with the possible consequence of excessive deflection of several floors. Also affecting the deflection of the floors may be the allegedly improper installation of a steel support beam including the drilling of a hole therein at its weakest point. (e) Several issues concerning the installation of the fireplaces must be reconsidered. To the extent that use of one of the fireplaces results in smoke entering the room, the defect must be charged to Pilgrim. Furthermore, the chimney was so constructed as to allow only a 16-inch closet in one of the bedrooms. Such a closet is unusable and the Fiores are entitled to the cost of correction. Contrary to the Referee's recommendation, this should not be limited to the cost of installing a closet unit within the interior of the bedroom. (f) The failure to properly grade the floor surrounding the swimming pool. (g) The installation of a defective stairway banister. It was Pilgrim's responsibility to secure replacement parts from Scholz if the original material was defective. (h) The failure to install paneling in the library. (i) Various allegations of technical building violations require further consideration, not because of any significant effect on the structure, but because the amount of Pilgrim's recovery must be so limited. A primary example is the installation of substitute piping which need not now be replaced but which is less than was reasonably expected (cf. *Jacob & Youngs v Kent*, 230 NY 239). The Fiores have wholly failed to establish their allegations of economic duress. We concur with the Referee's analysis that many of the difficulties and additional costs were of the Fiores' own making. The Fiores have not demonstrated the existence of circumstances which would have overcome their exercise of free will. Nor have they demonstrated why the change slips

which they signed, including those providing for credits (e.g., particularly regarding the roof and the floors), should not be enforced. Finally, we note that we have considered the other arguments raised by appellants, and find them to be without merit. Mangano, J. P., Gibbons, Rabin and Gulotta, JJ., concur.